IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00098-CMA
Civil Case No. 23-cv-01890-CMA

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.

LEONARD LUTON,

    Defendant-Movant.

## UNITED STATES' RESPONSE TO MOTION TO VACATE

Leonard Luton was convicted by a jury of one count of conspiracy to commit mail fraud and eight counts of aiding and abetting mail fraud. He alleges that his attorney incorrectly advised him on his sentencing exposure if he pleaded guilty and failed to inform him of the possibility of a plea deal or an open plea. Because he has failed to show prejudice from counsel's alleged ineffective assistance, his motion should be denied.

## BACKGROUND

Between February 2018 and January 2019, Luton's co-conspirator Rajay Dobson, who lived in Jamaica, duped S.O., an elderly woman who lived in Colorado, into believing "she had won $2.8 million lottery and a Mercedes Benz." *United States v. Luton*, No. 21-1285, 2022 WL 2764202, at *1 (10th Cir. July 15, 2022). At Dobson's direction, S.O. sent money and cellphones to Luton and others "to pay the 'fees'

1

required to receive her prizes." *Id.* One of the recipients was S.P., who also had been told that she won a lottery and that, to collect her winnings, "she needed to receive money from others and send it" to Luton. *Id.* Dobson further instructed S.O. to provide cash in person on two occasions. Both times, Luton was in the vehicle that arrived at S.O.'s residence. *Id.* at *1-2. S.O. was defrauded of nearly $1 million. *Id.* at *2.

Luton was charged in a superseding indictment with one count of conspiracy to commit mail fraud and nine counts of aiding and abetting mail fraud. ECF No. 45. The Government's "copious evidence" of Luton's involvement with the lottery scheme included:

(1) Luton's phone had been purchased by S.O. and contained a photograph of cash that S.O. provided, about 1,000 text messages exchanged with Dobson, and call details confirming Luton's presence on 19 occasions at the address where Dobson directed S.O. to send packages;

(2) bank records showing withdrawals from S.O.'s accounts, transfers to S.P., and S.P.'s deposits into Luton's accounts;

(3) text messages and shipping receipts showing that Luton directed others to wire funds to Jamaica on multiple occasions and that he paid friends hundreds of dollars around the time packages from S.O. were delivered to their addresses; and

(4) Luton created a MagicJack account for Dobson to use when calling S.O. because MagicJack would not accept Jamaican credit cards.

*Luton*, 2022 WL 2764202, at *2. The jury convicted Luton of all but one count. ECF No. 106. This court determined that Luton's Sentencing Guidelines range was 87 to 108 months in prison. ECF No. 162 at 67-69. The court imposed a concurrent sentence of 108 months on each of the nine counts. ECF No. 151.

Luton now asks this court to vacate his sentence.

## RULE 5 STATEMENT AND TIMELINESS

Pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Government states that Luton has not sought other postconviction relief and no evidentiary hearing has been conducted.

Further, Luton's motion is timely. A § 2255 motion is timely if it is filed within one year of the date when the judgment of conviction became final. 28 U.S.C. § 2255(f)(1). The Tenth Circuit affirmed Luton's judgment on July 15, 2022. *See Luton*, 2022 WL 2764202. His conviction therefore became final on October 13, 2022, when the 90-day deadline for a certiorari petition to the Supreme Court expired. *See United States v. Burch*, 202 F.3d 1274, 1276 (10th Cir. 2000). His July 14, 2023 motion was filed before the deadline of October 13, 2023. ECF No. 215. *See Price v. Philpot*, 420 F.3d 1158, 1163-65 (10th Cir. 2005) (applying the prison mailbox rule to § 2255 motions).

## ARGUMENT

This court construes Luton's pro se motion liberally but does not "assume the role of [his] advocate." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also United States v. McNeil*, No. 17-cv-02865-RM, 2018 WL 1470194, at *3 (D. Colo. Mar. 26, 2018) ("The general rule that pro se pleadings must be construed liberally has limits and 'the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.'" (quoting *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005))).

Luton asserts one claim for relief: ineffective assistance of counsel.

3

**I.       Luton has not shown he was prejudiced by his counsel's performance.**

To establish ineffective assistance, Luton must show (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that he was prejudiced by that deficient performance. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012).

For the deficient-performance prong, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). The performance "must have been completely unreasonable, not merely wrong." *Byrd v. Workman*, 645 F.3d 1145, 1168 (10th Cir. 2011).

When a defendant claims that counsel's ineffectiveness led him to go to trial rather than accept a plea, he must show that the outcome "would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012).  In particular, he must show "a reasonable probability" that:

> (1) a plea offer would have been presented to the court;
>
> (2) the court would have accepted the plea; and
>
> (3) the conviction or sentence under the plea would have been less severe than under the judgment imposed.

*Id.* at 163-64.  A reasonable probability requires more than speculation. *See United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995); *see also Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (noting a "reasonable probability" requires a "substantial, not just conceivable, likelihood").

4

Luton alleges that his attorney told him he "would be sentenced to 20 years, the [statutory] maximum for his charges," without accounting for, or discussing with Luton, the Sentencing Guidelines. He further alleges that his attorney "recommended that [he] go to trial," "never told [him] that he could have pled 'straight up' to the indictment without a plea offer or agreement," and "never told [him] that there was a possibility of a deal with the government." ECF No. 215-1 at 10. He claims his "decision to proceed to trial would have been different if" he had been correctly advised and had "known . . . [he] could have received way less than 20 years by pleading guilty." *Id.* at 4.

His allegations are dubious.[1] But this court need not assess counsel's performance because Luton has failed to show prejudice. *See Strickland*, 466 U.S. at 697. He has not shown a reasonable probability that (1) he would have pleaded guilty, or (2) the resulting sentence would have been more favorable than the one he received. *See Lafler*, 566 U.S. at 163-64.

**A. Luton has not shown he would have pleaded guilty.**

As this court observed at sentencing, Luton "repeatedly lied to everyone." ECF No. 162 at 55. He admits he even lied to his own attorney. ECF No. 215-1 at 4, 8. But Luton insists, through self-serving and conclusory assertions, that he "would not have gone to trial" had he only been advised of the impact of the Sentencing Guidelines. *Id.* at 4. For several reasons, Luton has not shown a reasonable probability that he would

---

[1] "A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance. However, counsel's failure to understand the basic structure and mechanics of the sentencing guidelines can rise to deficient performance under *Strickland*." *United States v. Parker*, 720 F.3d 781, 788 n.9 (10th Cir. 2013) (internal quotation marks and citation omitted).

5

have pleaded guilty had he been so advised.

First, to the extent Luton claims he was unaware of the role the Sentencing Guidelines might play, the government extensively addressed the Guidelines at a detention hearing months before trial counsel entered an appearance. In a memorandum filed prior to that hearing, the government estimated (accurately) Luton's offense level as a minimum of 29 and a corresponding sentencing range of 87 to 108 months in prison. ECF No. 29 at 7. At the hearing, the government noted "the significant advisory guideline range that has been set forth before the Court" and explained that "the advisory guideline range is . . . one of the factors to be considered" and that it was "not unfair for the Government to talk to the Court about its calculation of the guideline range[] because that is a valid consideration" for detention purposes. ECF No. 34 at 8, 23-24. Defense counsel specifically acknowledged that the government was alleging Luton was facing 87 months. *Id.* at 14.[2] Luton's suggestion that he accepted at face value trial counsel's (alleged) prediction of a 20-year sentence, when he had heard his previous attorney and the government discussing 87 to 108 months under the Sentencing Guidelines, rings hollow.

Second, despite his reliance on the possibility of a plea deal being kept from him, the record discloses no plea offer from the government, and Luton had no right to such an offer. *See United States v. Davis*, 900 F.2d 1524, 1526 (10th Cir. 1990) (noting a defendant has "neither a right to enter a conditional plea nor a right to enter a plea

---

[2] Although defense counsel stated she had "not specifically discussed [with Luton] what his guideline range would be," ECF No. 34 at 14, Luton was present at the hearing and heard his attorney's remarks regarding the government's position, *see* ECF No. 30.

6

bargain"). By "not alleg[ing] facts indicating such a deal was possible," Luton cannot "show a reasonable probability that the prosecution would have been willing to enter into a favorable [plea] agreement." *United States v. Donaldson*, 646 F. App'x 686, 688 (10th Cir. 2016).

As for an open or "straight up" plea, Luton "offers only his own conclusory statements to suggest that he may have entered an 'open plea' without a plea agreement." *Bedgood v. United States*, No. 18-14197-A, 2019 WL 11892583, at *1 (11th Cir. Mar. 15, 2019). As the Tenth Circuit has recognized, "subjective and self-serving statements" by a defendant regarding what he would have done, such as those in Luton's motion and attachments, "are insufficient to show a reasonable probability that, but for alleged counsel's errors, he would have pled guilty." *United States v. Morris*, 106 F. App'x 656, 659 (10th Cir. 2004). This is particularly true when, as here, "the record does not suggest [the defendant] was willing to admit guilt." *United States v. Robles*, 546 F. App'x 751, 753 (10th Cir. 2013).

From arrest through sentencing, Luton steadfastly protested his innocence and disclaimed responsibility, belying his current claim that he would have admitted guilt in an open plea. *See Lafler*, 566 U.S. at 171 (noting a court may consider the "defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions"). Luton lied to "agents during his post-arrest interview," ECF No. 162 at 55, and attempted to have evidence destroyed by asking a third-party to delete his iCloud

account, ECF No. 109 at 10.³  Luton insisted, through counsel, that he was innocent during his preliminary hearing in February 2019. ECF 35 at 58 (asserting, among other things, that "Luton maintained, and maintains now, that he did not know what was in the package that he picked up").  By the time the attorney who Luton alleges was ineffective made an appearance in September 2019, Luton had twice pleaded not guilty—first to the original indictment and again to the superseding indictment. ECF Nos. 23, 48. Luton then apparently lied to his attorney during their first meeting, believing "he and Dobson had covered their tracks," and his tune changed only after seeing "how much evidence the government had against" him. ECF No. 215-1 at 2-3, 8.

At trial, Luton lied extensively while proclaiming his innocence. ECF No. 109 at 8-10; *see also* ECF No. 162 at 55 (noting Luton "repeatedly lied to everyone," including to "this Court[] and to the jury").⁴  After the jury found him guilty on nine out of ten counts, Luton continued to deny responsibility. ECF No. 162 at 64 (denying "creating a scheme to defraud people" and insisting, "I don't do stuff like that, Your Honor. I am not no villain.  I am not no criminal.").  Luton even continued arguing with the court as it was imposing the sentence, insisting he never received any money. *Id.* at 177-78.

Luton's behavior throughout these proceedings hardly suggests a reasonable probability that he would have pleaded guilty "straight up" had he only known what his sentence would likely be under the Sentencing Guidelines. *See Castro-Davis v. United*

---

³ Luton, through counsel, objected to this part of the Presentence Investigation Report, ECF No. 40, but abandoned the objection at the hearing, ECF No. 162 at 34.

⁴ *See supra* note 4 (noting the obstruction-enhancement objection was abandoned).

*States*, No. 14-1547, 2015 WL 13928760, at *1 (1st Cir. Apr. 30, 2015) (holding the defendant failed to "demonstrate[] that he would have agreed to enter a straight plea" where the record showed he "denied responsibility for the [offense] even through his sentencing hearings"); *Mittal v. United States,* 471 F. Supp. 2d 370, 374 (S.D.N.Y. 2006) ("While the defendant's assertions of innocence, despite the powerful evidence against him, are not dispositive of whether the defendant would have pleaded guilty if advised to do so, they undercut the credibility of his assertion that he would in fact have pleaded guilty."); *see also Garcia v. United States*, 679 F.3d 1013, at 1014-15 (8th Cir. 2012) (collecting cases). Luton may regret not pleading guilty after being sentenced at the top of the guidelines for his offense level. But such regret does not show a reasonable probability that he would have pleaded guilty had he been advised about the Guidelines. *See United States v. Butler*, 118 F. App'x 371, 373 (10th Cir. 2004) ("Regret and second-guessing his own refusal to cooperate with the government does not provide [the defendant] grounds for an ineffective assistance of counsel claim.").

**B. Luton has not shown he would have received a better sentence.**

Luton's ineffective assistance claim also fails because he cannot show a reasonable probability of a less severe sentence had he pleaded without an agreement, let alone to the non-existent plea offer. *Lafler*, 566 U.S. at 164; *see also United States v. Orozco-Sanchez*, 804 F. App'x 952, 960 (10th Cir. 2020) (noting "a more favorable outcome is a necessary component of the analysis"). The only prejudice specifically raised in Luton's motion is that he went to trial and "could have received way less than 20 years by pleading guilty." ECF No. 215-1 at 4. But Luton has not argued that his

9

sentence on an open plea would have been more favorable than the concurrent sentences of 108 months that he received following trial. That alone should be fatal to his ineffective assistance claim.

To the extent his motion can be read as contending he would have a received a lesser sentence had he pleaded guilty, his claim still fails. Conceivably, by pleading guilty, Luton could have received a two-level reduction in offense level for acceptance of responsibility. *See* USSG § 3E1.1(a). In Luton's case, such a reduction would have lowered his offense level to a 27 and his sentencing range to 70-87 months. *See* USSG ch. 5, pt. A. But Luton cannot show—and has not attempted to show—that it is reasonably probable the government would have recommended, and the court would have accepted, a reduction under § 3E1.1(a).

A defendant who pleads guilty is not entitled to the acceptance reduction as a matter of right. *Id.* § 3E1.1 cmt. n.3. Rather, the court must consider a number of factors, including whether defendant "truthfully" admits the conduct comprising his offense. *Id.* cmt. n.1(a). Luton has not alleged he would have truthfully admitted the conduct comprising the offenses. Indeed, as discussed above, the record shows he likely would *not* have truthfully admitted the criminal conduct.

Even if Luton had pleaded guilty and truthfully admitted the criminal conduct, such evidence of acceptance of responsibility, though "significant," likely would have been "outweighed by conduct . . . inconsistent with such acceptance of responsibility." USSG § 3E1.1 cmt. n.3. In particular, "[c]onduct resulting in an enhancement under 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that

the defendant has not accepted responsibility for his criminal conduct," though both adjustments may apply in "extraordinary cases." *Id.* cmt. n.4.  Here, Luton abandoned his objection to the obstruction enhancement, which likely would still have applied had he pleaded guilty based on his extensive lies to the agents and attempts to destroy evidence.  And this case hardly qualifies as the "extraordinary" case in which both the obstruction and acceptance-of-responsibility adjustments would have applied. *Id.*

At bottom, Luton has not argued, much less demonstrated, that it is reasonably probable that his sentence on a straight up plea would have been more favorable than the 108 months he received.  And any suggestion of a better sentence on an open plea is complete conjecture that does not satisfy the prejudice required for ineffective assistance. *See United States v. Greenwood*, No. 12-CR-00504-RBJ-1, 2018 WL 3586399, at *6 (D. Colo. July 26, 2018) (rejecting an ineffective assistance claim premised on the failure to obtain the two-level reduction for acceptance of responsibility, observing that, "[g]iven the discretionary nature of most sentencing issues, [the defendant] states merely a conclusory assumption that his sentencing guideline range would have been lower").

II.     **Luton's motion does not warrant an evidentiary hearing.**

The court does not need to hold an evidentiary hearing to deny the motion.  The standard for obtaining an evidentiary a hearing "is higher than notice pleading." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004).  "[T]he petitioner bears the burden of alleging facts which, if proved, would entitle him to relief." *United States v. Shaw*, 292 F. App'x 728, 731 (10th Cir. 2008).  And when a § 2255 motion can be resolved on the

11

record, no hearing is necessary. *United States v. Mendez-Zamora*, 230 F. App'x 792, 79 (10th Cir. 2007); *see also* 28 U.S.C. § 2255(b) (noting no hearing is warranted when the motion and record show the defendant is not entitled to relief).

Here, the motion and record conclusively show that Luton's ineffective assistance claim lacks merit. Accordingly, an evidentiary hearing is not warranted.

## CONCLUSION

The court should deny Luton's motion.

Dated:  August 24, 2023

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: s/ *Jess D. Mekeel*
Jess D. Mekeel
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail: Jess.Mekeel@usdoj.gov

Counsel for United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I also certify that a copy will be placed in the U.S. Mail, postage pre-paid and addressed to the following:

Leonard Luton
Reg. No. 45133-013
FCI Berlin
P.O. Box 9000
Berlin, NH 03570

*s/ Kayla Keiter*
KAYLA KEITER
U.S. Attorney's Office